The order below is hereby signed.

Signed: January 17, 2009.



```
                        /s/ S. Martin Teel Jr.
                        _____
                        S. Martin Teel, Jr.
                        United States Bankruptcy Judge
```

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

```
In re                          )
                               )
DEBRA A. BROWN,                )   Case No. 08-00712
                               )   (Chapter 7)
              Debtor.          )   Not for Publication in
                               )   West's Bankruptcy Reporter
```

MEMORANDUM DECISION AND ORDER REQUIRING
FILING OF AMENDED REAFFIRMATION AGREEMENT

The debtor has filed a reaffirmation agreement with GMAC. The agreement must be viewed as ineffective unless the debtor files an amended reaffirmation agreement as explained below.

I

The debtor included with the reaffirmation agreement a Statement of Total Income and Expenses in accordance with Rule 4008. On that statement, the debtor notes that she listed her expenses on Schedule J as being $3,285.00, whereas she lists her current monthly expenses on the reaffirmation agreement as being $2,757.00. Although the Official Form of reaffirmation agreement filed by the debtor prompts the debtor to explain any discrepancy between expenses listed on Schedule J and current monthly expenses, the debtor failed to provide such an explanation.

A review of the debtor's schedules permits the inference that $409.00 of the $528.00 difference in monthly expenses is attributable to the car payment the debtor now seeks to reaffirm. That still, however, leaves $119.00 of the variance unaccounted for, and that unexplained $119.00 shortfall gives rise to a presumption of undue hardship. The reaffirmation agreement includes no explanation why the debtor can comply with the reaffirmation agreement despite that presumption. Accordingly, the reaffirmation agreement is ineffective. See In re Jo, 2007 WL 4411619, at *1 (Bankr. E.D. Va. Dec. 14, 2007):

> It is not appropriate to provide income and expenses in Part D different from those on Schedules I and J without explaining the changes. See In re Laynas, 345 B.R. 505, 513-15 (Bankr. E.D. Pa. 2006) (holding that the court has the authority to consider the accuracy of the financial information reported in Part D and find a presumption of undue hardship if the debtor fails to harmonize the Part D information with the information contained in the schedules and the Rule 4008 statement). The changes and the reasons for them are important for the court in its review of a reaffirmation agreement.

Accordingly, I will require the submission of an amended reaffirmation agreement.

II

The reaffirmation agreement includes the debtor's counsel's recitation that the agreement represents a fully informed agreement by the debtor. Although the court has no discretion to second guess the debtor's attorney's judgment in that regard, I note that it is not at all clear that a reaffirmation agreement

2

would be necessary to assure that GMAC would not seize the car. The car is worth $9,900 according to the debtor's schedules, and the debt to be reaffirmed stands at $17,890.30.  If the debtor remains current on car payments and keeps the car insured, GMAC's best interests may be to permit the debtor to retain the car even if it has a right to enforce an ipso facto (due-on-bankruptcy) clause.  Moreover, the debtor can seek entry of an order giving GMAC assurances that she will be liable for any loss arising from failure to keep the car insured or any damage arising from failing to facilitate a turnover if GMAC invokes a right to repossess the car.  See In re Morgan, 2008 WL 2705205, at *1-2 (Bankr. D.D.C. July 7, 2008).[1]

A debtor's filing of a reaffirmation agreement has been held to prevent the automatic stay from terminating under 11 U.S.C. § 362(h)(1)(B) even if the reaffirmation agreement is disapproved as imposing an undue hardship.  But that is only short-term insurance against enforcement of any ipso facto clause. Inevitably the automatic stay will terminate in this case pursuant to 11 U.S.C. § 362(c)(1) and (2).  Nothing in the Bankruptcy Code alters whatever rights the secured creditor has

---

[1] In light of 11 U.S.C. § 727(a)(10) (providing for denying a discharge if "the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter"), the debtor may wish to endorse the proposed order (even though that type of order, I think, only clarifies the discharge injunction and does not amount to a denial of discharge).

3

under nonbankruptcy law to enforce its lien based on an ipso facto (due-on-bankruptcy) clause when the debt has not been reaffirmed and the automatic stay has terminated.  But see, e.g., In re Moustafi, 371 B.R. 434 (Bankr. D. Ariz. 2007) (if the debtor filed a reaffirmation agreement and it was disapproved, then invocation of ipso facto clause is inappropriate even after discharge).[2]  The Supreme Court has made clear that, except as provided otherwise by the Bankruptcy Code, liens pass through

---

[2]  Some decisions issued prior to amendments made in 2005 to the Bankruptcy Code held that ipso facto clauses were unenforceable by reason of the automatic stay.  See Riggs Nat'l Bank v. Perry, 729 F.2d 982, 984-85 (4th Cir. 1984)).  Some decisions have been viewed as having extended that reasoning to hold that ipso facto clauses were unenforceable even after entry of a discharge and the termination of the automatic stay, Capital Commc'ns Fed. Credit Union v. Boodrow (In re Boodrow), 126 F.3d 43, 51 (2d Cir. 1997), although those decisions arose in the context of what the debtor was required to do under 11 U.S.C. § 521, not what the creditor was entitled to do pursuant to an ipso facto clause after termination of the automatic stay.  To the extent that, prior to the amendments to the Bankruptcy Code in 2005, those decisions were interpreted as making ipso facto clauses unenforceable after termination of the automatic stay, those decisions, as thus interpreted, ran afoul of Butner v. United States, 440 U.S. 48 (1979).  See In re Kasper, 309 B.R. 82, 87 n.7 (Bankr. D.D.C. 2004).  Nothing in the 2005 amendments to the Bankruptcy Code alters that assessment.  Specifically, 11 U.S.C. § 521(d) addresses the effect of a failure timely to comply with §§ 362(h) and 521(a)(6), and expressly does not alter the effect of a timely compliance with those provisions.  Section 521(d) provides that "[n]othing in this subsection shall be deemed to justify limiting [an ipso facto clause] in any other circumstance" (which would include a timely compliance with §§ 362(h) and 521(a)(6)).  If Congress intended to make ipso facto clauses unenforceable postdischarge, 11 U.S.C. § 365(b)(2)(B) demonstrates that it knows how to do that in unambiguous terms that are absent from the current Bankruptcy Code.

bankruptcy unaffected.  See Dewsnup v. Timm, 502 U.S. 410, 417 (1992). Regardless of what a judge might think regarding whether the goal of the debtor having a fresh start would be advanced by making ipso facto clauses unenforceable postdischarge, any alteration of nonbankruptcy law entitlements by reason of the filing of a bankruptcy case is a policy task for Congress, not the court.  Butner v. United States, 440 U.S. 48 (1979).  An effective reaffirmation agreement, therefore, may be necessary to be absolutely certain that the creditor will not invoke an ipso facto clause once the automatic stay terminates under 11 U.S.C. § 362(c)(1) and (2).[3]  But, as noted above, even if the debt is not reaffirmed, GMAC might decide not to enforce any ipso facto clause.

---

[3] In the event that no provision of the Bankruptcy Code bars enforcement of an ipso facto clause once the automatic stay has terminated, non-bankruptcy law will control whether the ipso facto (due-on-filing-bankruptcy) clause can be enforced.  See In re Rowe, 342 B.R. 341 (Bankr. D. Kan. 2006) (Kansas statute likely barred post-discharge enforcement based solely on ipso facto, due-on-bankruptcy, clause); 4 COLLIER ON BANKRUPTCY ¶ 521.10[4] (Matthew Bender 15th ed. rev.) ("[Section 521(a)(6)] does not authorize a creditor to repossess property.  It leaves that issue to applicable nonbankruptcy law.  There are likely to be serious questions under nonbankruptcy law about whether repossession from a debtor who is current in payments is in good faith, whether a creditor has waived a default by accepting later payments, or whether other provisions of state law would prohibit repossession.").  Whether District of Columbia law would bar enforcement of an ipso facto clause when the debtor is current on payments is an issue the debtor could raise in the Superior Court for the District of Columbia.  The District of Columbia does not appear to have enacted the statutory provision that Kansas had adopted in In re Rowe.

III

In accordance with the foregoing, it is

ORDERED that within 21 days after the date of entry of this order, the debtor shall file an amended reaffirmation agreement, either explaining the $119.00 difference, or, if the difference is not explained, acknowledging the presumption of undue hardship and explaining why the debtor believes the presumption of undue hardship should be treated as rebutted.  It is further

ORDERED that if the reaffirmation agreement is not timely amended, the reaffirmation agreement will be stricken and the clerk will be instructed that there is no longer any reason to delay entry of a discharge.

[Signed and dated above.]

Copies to: Debtor; Debtor's attorney; Chapter 7 Trustee; Office of United States Trustee.

O:\TEEL\Order Forms\Reaffirmation Agreement - Failure of Agreement to Explain Variance of Part D with Schedules I and J_v3.wpd

6